Christopher D. Moon (SBN 246622)
Email: cmoon@kamberlaw.com
Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
**KAMBERLAW, LLP**
9404 Genesee Avenue, Suite 340
La Jolla, California 92037
Phone: 310.400.1051
Fax: 858.800.4277

*Counsel for Plaintiff Sierra Gillespie,
and the putative Classes*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA GILLESPIE, individually, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>TASTE OF NATURE, INC.,<br><br>        Defendant. | **Case No.:**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 *ET SEQ.*);**<br>**2. DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF. CODE §§ 17500, *ET SEQ.*);**<br>**3. CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*); AND**<br>**4. QUASI-CONTRACT.**<br><br>**DEMAND FOR JURY TRIAL** |

/ / /

---

**CLASS ACTION COMPLAINT**

Plaintiff, Sierra Gillespie, individually, and on behalf of others similarly situated, by and through her undersigned counsel, files this Class Action Complaint against Defendant Taste of Nature, Inc., ("Defendant" or "Taste of Nature") and states as follows:

## NATURE OF THE ACTION

1.     "Informed consumers are essential to the fair and efficient functioning of a free market economy.  Packages . . . should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." 15 U.S.C.A. § 1451.

2.     The average consumer spends a mere 13 seconds making an in-store purchasing decision.[1]  That decision is heavily dependent on a product's packaging, and particularly the package dimensions:  "Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]

3.     Plaintiff brings this class-action lawsuit based on Defendant's misleading, deceptive and unlawful conduct in packaging its Chocolate Chip Cookie Dough Bites in opaque cardboard containers with the following dimensions: 3.5 inches x .75 inches x 5.875 inches.  The Chocolate Chip Cookie Dough Bites containers are uniformly under-filled or "slack-filled."

4.     As used herein, "Products" include all products manufactured by Defendant that are substantially similar to the 3.1-ounce and 4.0-ounce opaque boxes of candy

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

[2] http://www.consumerreports.org/cro/magazine-archive/2010/january/shopping/product-packaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers).

**CLASS ACTION COMPLAINT**

within the following product lines:  Cookie Dough Bites, Chocolate Chip Cookie Dough Bites, Fudge Brownie Cookie Dough Bites, Santa's Village Chocolate Chip Cookie Dough Bites, Cookies N' Cream Cookie Dough Bites, Cinnamon Bun Bites, Red Velvet Cupcake Bites, Moon Pie Bites, Strawberry Dream Bites, Birthday Cake Cookie Dough Bites, Peanut Butter Cookie Dough Bites, Muddy Bears, Shari Candies Cherry Sour Balls, Despicable Me 2 Sour Gummies, Sqwigglies, and Hello Kitty Treats.[3]

5.     As more fully described below, the slack-fill in the Products is non-functional, and therefore misleading and unlawful.

6.     As a result of its unlawful conduct, Defendant has obtained substantial profits from its sales of the Products, and has retained these profits.  Plaintiff and Class Members have suffered actual damages.  Plaintiff brings this action individually and on behalf of those similarly situated.  Plaintiff seeks to represent a National Class and a California Subclass (defined *infra*.).   Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its unlawful and deceptive business practices, as detailed herein.   In addition, Plaintiff seeks injunctive relief to stop Defendant's unlawful conduct in misleadingly and deceptively packaging, advertising, and marketing the Products.  Plaintiff makes these allegations based on her personal knowledge as to herself and, otherwise, on information and belief based on investigation of counsel.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the

---

[3] *See also* http://tasteofnatureinc.com/product-galleries/theatre-box-candy/;

http://candyasap.com/theater-boxes/all-theater-box-candy

3

**CLASS ACTION COMPLAINT**

aggregate.

8.    This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through its sales of the Products to California consumers.

9.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California.   In addition, Defendant is headquartered in Santa Monica, California. Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District, including Plaintiff's purchase of the Products in this judicial district.  *See* Declaration of Sierra Gillespie Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached hereto as Exhibit A.

## PARTIES

10.    Plaintiff Sierra Gillespie is a resident of Redondo Beach, California.   On August 25, 2017, Ms. Gillespie made a purchase of a Chocolate Chip Cookie Dough Bites Product (3.1-ounce box), a Fudge Brownie Cookie Dough Bites Product (3.1-ounce box), and a Santa's Village Chocolate Chip Cookie Dough Bites Product (3.1-ounce box) at a Big Lots store in Redondo Beach, California.   The purchase price of each Product was $1.00.  Plaintiff's claim is typical of all members of the Classes in this regard.  In addition, the non-functional slack-fill contained in the Products purchased by Plaintiff is typical the slack-fill contained in the Products purchased by members of the Classes.

11.    Taste of Nature, Inc., is a corporation headquartered in Santa Monica, California.   Taste of Nature maintains its principal business office at 2828 Donald Douglas Loop North, Santa Monica, California, 90405.   Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.  The unfair, unlawful, deceptive, and misleading packaging of the Products was

**CLASS ACTION COMPLAINT**

created, approved and/or authorized by Defendant and its agents.

## FACTUAL ALLEGATIONS

### Federal and California State Law Prohibit Non-Functional Slack-Fill

12.     Defendant's deceptive and misleading conduct, as described herein, violates the Federal Food, Drug and Cosmetic Act ("FDCA") Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 343(d)); and the Code of Federal Regulations Title 21 part 100, *et seq*., as well as parallel California statutes.

13.     21 C.F.R. § 100.100 prohibits nonfunctional slack-fill:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.  Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

14.     In addition, pursuant to 21 C.F.R. § 100.100, a container is presumptively misleading if it does not allow the consumer to fully view its contents and if it contains nonfunctional slack-fill.

15.     In adopting 21 C.F.R. 100.100, the United States Food and Drug Administration ("FDA") stated: "Congress determined . . . that packages that are only partly filled (containing slack-fill) create a false impression as to the quantity of food they contain." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993). "In fact, Congress stated in arriving at section 403(d) of the act that that section is 'intended to reach deceptive methods of filling where the package is only partly filled and, *despite the declaration of quantity of contents on the label*, creates the impression that it contains more food than it does.'" *Id*. at 64129 (internal citations omitted) (emphasis added).

16.     California state law also prohibits non-functional slack-fill and mirrors the federal laws described herein. *See* California Business and Professions Code § 12606.2.

**<u>Defendant's Products Contain Substantial Slack-Fill</u>**

17.     Defendant manufactures, packages, markets, promotes, labels, advertises, and sells a variety of confectionery products, including the Products at issue.

18.     The Products are sold throughout the United States, including the State of California, and are regularly sold at grocery stores, convenience stores, big box stores, and other food retail outlets.

19.     The Chocolate Chip Cookie Dough Bites Products are described as "bite size cookie dough in creamy milk chocolate."

6

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9



10      20.    The Chocolate Chip Cookie Dough Bites candy is uniformly packaged in
11   opaque cardboard containers that have the following dimensions: 3.5 inches x .75 inches
12   x 5.875 inches.
13      21.    The candy is further uniformly packaged in a transparent plastic pouch,
14   which is placed inside the Product container.
15
16



17
18
19
20
21
22
23
24
25
26
27
28

**CLASS ACTION COMPLAINT**

22.     As illustrated immediately *supra*, the plastic pouch holding the candy contains significant slack-fill.

23.     The total volume of the pouch—including the candy and the significant slack-fill contained therein—only comprises approximately 53% of the total volume of the cardboard Product container.  Put differently, the Product container still contains approximately 47% slack-fill even with the pouch inside—and this slack-fill measurement does not include the significant slack-fill inside the pouch.

24.     Were the Product container filled with just the candy—and not the pouch— the Product container would be approximately 58% slack-filled.  "Space within a container that is devoid of product is slack-fill[.]"  58 Fed. Reg. at 64126.



**CLASS ACTION COMPLAINT**

25.     Because the Products are packaged in opaque, non-pliable cardboard containers, consumers, such as Plaintiff and Class Members, could not see the contents of the container at the time of purchase, including the substantial, non-functional slack-fill.

26.     Defendant's misrepresentations and omissions are uniform because the Products are packaged in uniformly-sized containers.

**The Products' Slack-Fill Is Non-Functional**

27.     The slack-fill in the Products is non-functional, and therefore unlawful, because it cannot be justified by any of the safe-harbor provisions contained in 21 C.F.R § 100.100(a).[4]

**21 C.F.R § 100.100(a)(1) [Protection of the Contents of the Package]**

28.     The slack-fill in the packaging of the Products does not protect the Product contents.

29.     A classic example of slack-fill that is designed to protect the contents of a package is the empty space contained in bags of potato chips.  The packages are filled with air to protect the fragile chips during shipment and in retail display.

30.     By contrast, here, the substantial slack-fill may actually *increase* the risk of damaging the candy contained in the packaging.  The more empty space there is in the Products' packaging, the more movement the Products will likely experience within the packaging, which increases the potential the candy pieces will be damaged.

31.     In any event, the rigid cardboard containers in which the Products are packaged provide significant protection to the candies from any external forces that may impact the candies.

─────────────────────

[4] For the same reasons, the slack-fill cannot be justified under the identical safe-harbor provisions contained in California Business and Professions Code § 12606.2.

**CLASS ACTION COMPLAINT**

## 21 C.F.R § 100.100(a)(2) [Requirements of Machines Used for Enclosing the Contents]

32.     There is no machine requirement used for enclosing the Product contents that would justify the Products' substantial slack-fill.

33.     In industry-standard packaging-line machinery, a candy container is held in a vertical position by a "cartoner" machine with the top end of the container remaining open. The container is moved in an intermittent manner such that the opening of the container is indexed directly below the filler. The filler typically consists of a hopper containing bulk quantities of product. The product is then conveyed from the hopper to the scale, which weighs the pre-determined amount of product. Next, the product is dropped into the container through its open end, either directly through a chute into the container, or into a dispenser with a gate that opens when the container is in position.

34.     After the container is filled, the cartoner machine conveys the container to the next station, where the container's top flaps are sealed. Thereafter, the container exits the cartoner machine to the tray or case packer.

35.     The industry standard machines are capable of filling and enclosing the Products with far less slack-fill than the Products currently contain.

36.     In fact, very similar candy products packaged and sold in very similar cardboard containers contain substantially less slack-fill than Defendant's Products.

37.     Accordingly, the amount of slack-fill cannot be justified by the machines and equipment used to enclose the Products.

## 21 C.F.R § 100.100(a)(3) [Unavoidable Product Settling During Shipping and Handling]

38.     Product "settling" accounts for approximately 2% of the slack-fill in the Products' packaging; thus, the substantial slack-fill is not due to unavoidable product settling.

**CLASS ACTION COMPLAINT**

39.   Due to the candies' size, shape and consistency, when placed in the packaging, the candy pieces create minimal void patterns, and experience very little "settling."

**21 C.F.R § 100.100(a)(4) [Need for the Package to Perform a Specific Function]**

40.   The Products' packaging does not "perform a specific function," such as playing a role in the "preparation or consumption" of the candies (for example, cereal that is sold in a bowl-shaped container to which a consumer adds milk and that necessarily requires empty space to accommodate that purpose).

41.   Nor is any such function "clearly communicated to consumers."  The Products' packaging and labeling are silent as to any function beyond merely holding the candies.

**21 C.F.R § 100.100(a)(5) [Reusable Container Where the Container Has Independent Value]**

42.   The Products are not packaged in a container that is meant to be reused or otherwise used after the candies are consumed.

43.   Nor is the packaging a "durable commemorative or promotional package."

44.   In addition, the packaging does not have any value that is both significant in proportion to the value of the Products and independent of its function to hold the food.

45.   Rather, the packaging is a cardboard container that is expected to be discarded after the candies are consumed, and a reasonable consumer does not attach any independent value, monetary or otherwise, to the Products' packaging.

**21 C.F.R § 100.100(a)(6) [Food Labeling and Packing Requirements]**

46.   As described herein, the level of fill in the Product containers can certainly be increased.  There is nothing unique or inherent to the candy pieces (e.g., their shape, size, composition, etc.) that would prevent more of them from being placed in the

packaging.  Indeed, very similar candy products packaged in very similar packages contain substantially higher levels of fill than Defendant's Products.

47.    There is also nothing unique or inherent to the candies that requires Defendant to package them in a specific packaging material, such as the cardboard containers at issue.

48.    Nor is there an industry standard for packaging the Products in a container of a specific shape, size, or in one containing a specific number of candy pieces.

49.    Finally, the packaging could be reduced and still accommodate the required food labeling.

**The Products' Packaging Is Misleading**

50.    Plaintiff relied on the Products' packaging as a representation of the quantity of candy contained in the packaging.    Accordingly, Plaintiff was misled and deceived because she believed she was purchasing more Product than was actually received.

51.    Had Plaintiff known Defendant's packaging was substantially slack-filled, she would not have purchased the Products, or would have purchased them on different terms.

52.    Plaintiff would, however, likely purchase the Products in the future if the Products complied with the applicable laws.

## CLASS DEFINITION AND CLASS ALLEGATIONS

53.    Plaintiff hereby re-alleges and incorporates the foregoing allegations as if set forth herein in their entirety.

54.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others similarly situated, and as a member the Class and Subclass defined as follows (collectively, the "Classes"):

> All citizens of the United States who, within the relevant statute of limitations period, purchased Defendant's Products

12

**CLASS ACTION COMPLAINT**

("Nationwide Class"); and
All citizens of California who, within four years prior to the filing
of the Complaint, purchased Defendant's Products ("California
Subclass").

55.    Excluded from the Classes are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

56.    Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

57.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

58.    **Numerosity**:  Members of the Classes are so numerous that joinder of all members is impracticable.  Upon information and belief, the Nationwide Class consists of hundreds of thousands of purchasers dispersed throughout the United States, and the Subclass likewise consists of tens of thousands of purchasers throughout the State of California.   Accordingly, it would be impracticable to join all members of the Nationwide Class and California Subclass before the Court.

59.    **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Classes that predominate over any individual issues.  Included within the common questions of law or fact are:

- Whether the Products' containers or packaging were made, formed, or filled as to be misleading;

13

**CLASS ACTION COMPLAINT**

- Whether the Products contained non-functional slack-fill;
- Whether Defendant engaged in unlawful, unfair or deceptive business practices by packaging, advertising and/or selling the Products;
- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code § 17500, *et seq.*; and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;
- Whether Plaintiff and the Classes are entitled to equitable and/or injunctive relief;
- Whether Plaintiff and the Class Members have sustained damages as a result of Defendant's unlawful conduct;
- The proper measure of damages sustained by Plaintiff and Class Members; and
- Whether Defendant was unjustly enriched by its misleading and deceptive practices.

60.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes she seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misbranded Products.   Defendant's unlawful, unfair and/or fraudulent conduct concerns the same business practices described herein irrespective of where they occurred or were experienced.   Plaintiff and the Classes sustained similar injuries arising out of Defendant's conduct.   Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

61.     **Adequacy:** Plaintiff is an adequate representative of the Classes she seeks to represent because her interests do not conflict with the interests of the members of the Classes Plaintiff seeks to represent.   Plaintiff will fairly and adequately protect the interests of members of the Classes and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer-protection litigation.

**CLASS ACTION COMPLAINT**

62.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a.   The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

    b.   Absent a Class, the members of the Classes will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

    c.   Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

    d.   When the liability of Defendant has been adjudicated, claims of all members of the Classes can be administered efficiently and/or determined uniformly by the Court; and

    e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Classes can seek redress for the harm caused to them by Defendant.

63.    Because Plaintiff seeks relief for all members of the Classes, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant.

**CLASS ACTION COMPLAINT**

64.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

65.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

66.     Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq.*)**
**(*for the California Subclass*)**

67.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

68.     Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL").  The UCL provides, in pertinent part:  "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

69.     Plaintiff brings this claim seeking equitable and injunctive relief to stop Defendant's misconduct, as complained of herein, and to seek restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

70.     Defendant's knowing conduct, as alleged herein, constitutes an "unfair"

16

**CLASS ACTION COMPLAINT**

and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

71.     Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant made uniform and materially false representations and omissions regarding the Products' packaging by including substantial non-functional slack-fill.

72.     Defendant is aware that the representations and omissions it has made about the Products were and continue to be false and misleading.

73.     Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the packaging of the Products.

74.     There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

75.     Defendant's misrepresentations of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

76.     Defendant's conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.  This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

77.     In addition, Defendant's conduct was, and continues to be, unfair, in that its injury to countless purchasers of the Products is substantial, and is not outweighed by any countervailing benefits to consumers or to competitors.

78.     Moreover, Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Defendant's practice of uniformly enclosing its Products with substantial non-functional slack-fill was and is likely to deceive and

**CLASS ACTION COMPLAINT**

mislead reasonable consumers, including Plaintiff and Subclass members, and Defendant knew or should have known its slack-filling practices were misleading and deceptive.

79.     Plaintiff purchased the Products in reasonable reliance on the Products' packaging size as a representation of the quantity of candy contained in the packaging, as further described herein.  Based on the oversized packaging of the Products, Plaintiff believed she was purchasing more candy than was actually received in the Product containers.

80.     Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products that lacked the quantities of candy advertised and represented by the packaging size, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

81.     As a result of the business acts and practices described above, Plaintiff and members of the California Subclass, pursuant to § 17203, are entitled to an Order enjoining such future wrongful conduct on the part of Defendant and such other Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

82.     Pursuant to Civil Code § 3287(a), Plaintiff and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct.  The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Subclass are entitled to interest in an amount according to proof.

///

///

**CLASS ACTION COMPLAINT**

**SECOND CAUSE OF ACTION**
**Deceptive Advertising Practices**
**(California Business & Professions Code §§ 17500, *et seq.*)**
**(*for the California Subclass*)**

83.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

84.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising[.]"

85.    Defendant violated § 17500 when it represented, through its false and misleading packaging of the Products, that the Products possessed characteristics and value that it did not actually have.

86.    Defendant's deceptive slack-filling practices were specifically designed to induce reasonable consumers, like Plaintiff, to purchase the Products. Defendant's uniform, material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its uniform representations and omissions were untrue and misleading. Plaintiff purchased the Products in reliance on the representations made by Defendant, as alleged herein.

87.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

88.    The above acts of Defendant, in disseminating material misleading and deceptive representations throughout California to consumers, including Plaintiff and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of § 17500.

89.    In making and disseminating the representations alleged herein, Defendant

**CLASS ACTION COMPLAINT**

knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

90.     Defendant continues to engage in unlawful, unfair and deceptive practices in violation of § 17500.

91.     As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the California Subclass, pursuant to § 17535, are entitled to an Order of this Court enjoining such future wrongful conduct on the part of Defendant, and requiring Defendant to disclose the true nature of its misrepresentations.

92.     Plaintiff and members of the California Subclass also request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

**THIRD CAUSE OF ACTION**
**Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(*for the California Subclass*)**

93.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

94.     Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

95.     The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

96.     The Product is a "good," as defined by the CLRA in California Civil Code §1761(a).

97.     Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

**CLASS ACTION COMPLAINT**

98.   Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

99.   Purchase of the Products by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

100.   Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics . . . uses, benefits or quantities that they do not have" in that the Products contain substantial non-functional slack-fill. Defendant has unfairly profited from its false and misleading slack-filling practices.

101.   Similarly, Defendant violated section 1770(a)(7) by representing that the Product "is of a particular standard, quality, or grade . . . if it is of another" by falsely and deceptively enclosing substantial non-functional slack-fill in the Products' packaging.

102.   In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell it as advertised" in that the Products do not contain the quantity of candy that the oversized, non-functionally slack-filled packaging represents to reasonable consumers is contained therein.

103.   Defendant's uniform, material, representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

104.   Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of facts that Defendant suppressed and failed to disclose; and, Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

105.   Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct.  Such injury includes, but is not limited to, the purchase price of the Products and/or value of the quantity of candy that was

**CLASS ACTION COMPLAINT**

displaced by the non-functional slack-fill in the Products.

106.   Plaintiff and members of the California Subclass are entitled to seek and seek injunctive relief to put an end to Defendant's violations of the CLRA.

107.   Moreover, Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers to increase the sale of the Products.

108.   Pursuant to California Civil Code § 1782(a), Plaintiff, on her own behalf, and on behalf of members of the California Subclass, notified Defendant of the alleged violations of the Consumer Legal Remedies Act.  Despite giving Defendant well over 30 days from the date of the notification letter to provide appropriate relief for violations of the CLRA, Defendant has failed to provide any such relief.  As such, Plaintiff also seeks compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money that may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

109.   Plaintiff further requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

**FOURTH CAUSE OF ACTION**
**QUASI-CONTRACT**
***(for the Nationwide Class and California Subclass)***

110.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

111.   By purchasing the Products, Plaintiff and members of the Classes conferred a benefit on Defendant in the form of the purchase price of the Products.

112.   Defendant had knowledge of such benefits.

22

**CLASS ACTION COMPLAINT**

113.   Defendant appreciated the benefits because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

114.   Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefits were obtained by Defendant's fraudulent and misleading representations and omissions.

115.   Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiff and members of the Classes, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.   For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Nationwide Class and California Subclass; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

B.   For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.   For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Classes for all causes of action;

D.   For an order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to package, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

E.   For an order awarding attorneys' fees and costs;

F.   For an order awarding pre- and post-judgment interest; and

G.   For such other and further relief as the Court deems just and proper.

**CLASS ACTION COMPLAINT**

DATED:  March 13, 2018                    **KAMBERLAW, LLP**


                                By:  /s/ Christopher D. Moon
                                     Christopher D. Moon

                                     *Attorneys for Plaintiff and the putative Classes*

**CLASS ACTION COMPLAINT**